# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

HOWARD MENAKER, individually and
on behalf of similarly situated
individuals,

   *Plaintiff*,

  v.

GENERAL MOTORS LLC,

   *Defendant*.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 26-cv-11701

## CLASS ACTION COMPLAINT

Plaintiff, Howard Menaker ("Plaintiff"), individually and on behalf of others similarly situated, by and through his undersigned counsel, and for his Class Action Complaint against Defendant General Motors LLC ("GM" or "Defendant"), alleges as follows based upon personal knowledge with respect to himself and on information and belief derived from, among other things, investigation by counsel and review of public documents as to other matters.

## NATURE OF THE ACTION

1.     This is an action for damages and any other available legal or equitable remedies, for violations of the Michigan Consumer Protection Act ("CPA"), Mich. Comp. Laws § 445.903 *et seq.*, Unjust Enrichment, and Money Had and Received,

1

resulting from Defendant's practice of charging its customers inflated prices in response to unlawfully imposed tariffs.

2. This lawsuit arises from Defendant's retention of windfall profits generated as a consequence of the unlawful tariffs imposed by the Trump Administration under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701 *et seq.* This windfall is a direct result of Defendant systematically passing on the costs of IEEPA tariffs to its own customers—including Plaintiff—through elevated product prices.

3. Beginning on February 1, 2025, President Donald J. Trump issued Executive Orders 14193, 14194, and 14195 imposing IEEPA-based duties on certain imports from Canada, Mexico, and China, respectively. He later issued Executive Order 14245 on March 24, 2025 concerning tariffs on countries importing Venezuelan oil, and Executive Order 14257 on April 2, 2025 declaring a national emergency based on large and persistent United States goods trade deficits and imposing reciprocal tariffs on a broad range of trading partners. *See* Exec. Order No. 14193 (Feb. 1, 2025); Exec. Order No. 14194 (Feb. 1, 2025); Exec. Order No. 14195 (Feb. 1, 2025); Exec. Order 14257 (Apr. 2, 2025); Exec. Order No. 14245 (Mar. 24, 2025) (collectively, the "Tariff Executive Orders").

4. The sweeping Tariff Executive Orders imposed an array of duties ranging from 10% to 145% based on country-specific tariff policy dictated through

published Executive Orders. *See* Exec. Order No. 14,257, 90 Fed. Reg. 15,041 (Apr. 2, 2025); Exec. Order No. 14,259, 90 Fed. Reg. 15,509 (Apr. 8, 2025); Exec. Order No. 14,266, 90 Fed. Reg. 15,625 (Apr. 9, 2025).

5. Studies by the Federal Reserve Bank of New York find that "U.S. firms and consumers continue to bear the bulk of the economic burden of the high tariffs imposed in 2025."[1] Whereas the imposition of tariffs on foreign trade partners was intended to even international trade deficits, much of the cost of the applicable tariffs was passed on to American consumers who bore the brunt of tariff costs in the form of increased prices.

6. When goods are imported into the United States, United States Customs and Border Protection ("CBP") assesses and collects tariffs on those goods based on the Harmonized Tariff Schedule of the United States. Pub. L. No. 100-418, 102 Stat. 1107 (1988). An importer may receive a refund for tariffs through a process known as liquidation. *See* 19 U.S.C. § 1504(b).

7. Defendant paid IEEPA tariffs when it imported products and/or components of the products Plaintiff and similarly situated consumers ultimately purchased. To offset the cost of paying IEEPA tariffs, Defendant passed those costs on to Plaintiff and similarly situated consumers by inflating the prices of its products.

---

[1] Mary Amiti, Chris Flanagan, Sebastian Heise, and David E. Weinstein, *Who is Paying for the 2025 U.S. Tariffs?*, Federal Reserve Bank of New York (Feb. 12, 2026), https://libertystreeteconomics.newyorkfed.org/2026/02/who-is-paying-for-the-2025-u-s-tariffs/.

8.     On February 20, 2026, the United States Supreme Court held that the IEEPA and other statutes cited in the Tariff Executive Orders do not authorize the President to impose tariffs. *Learning Res., Inc. v. Trump*, 607 U.S. ___ (2026).

9.     As a result, any IEEPA tariffs charged to Defendant were unlawful for lack of statutory authorization, and Defendant is entitled to seek a refund for any tariffs it paid pursuant to the Tariff Executive Orders through either litigation or the liquidation process.

10.     However, Defendant *has already* passed its unlawful IEEPA tariff burdens onto Plaintiff and members of the Class by directly charging elevated prices for its products. Plaintiff and members of the Class were thereby deprived of money paid to Defendant for unlawful IEEPA tariffs.

11.     GM has announced that it expects to collect $500 million in U.S. government refunds for illegally imposed tariffs.[2]

12.     Yet, Defendant has not disclosed to consumers whether it intends to seek tariff refunds from the government and has made no commitment to return any portion of anticipated tariff refunds to the consumers who bore those costs through elevated prices.

---

[2] Elizabeth Schulze, *General Motors Says It Expects $500 Million tariff refund after SCOTUS Ruling*, ABC News (April 28, 2026), *https://abcnews.com/Business/general-motors-expects-500-million-tariff-refund-after/story?id=132447958*

13.     If Defendant receives a refund for the IEEPA tariffs, Defendant will have been provided a windfall as a result of already having charged consumers for the collection of such tariffs. Defendant's retention of money obtained from charging consumers for IEEPA tariffs offends public policy, is oppressive, and causes substantial injury to consumers by depriving them of the cost of the unlawful IEEPA tariffs.

14.     The value of IEEPA tariff refund claims is not merely speculative. Even before the Supreme Court issued its decision in *Learning Resources*, a robust secondary market had emerged in which distressed investors and hedge funds have purchased IEEPA tariff refund claims from importers at a discount in exchange for immediate liquidity.[3]

15.     The existence and active trading of these claims confirms that the tariff refunds represent concrete, quantifiable economic value—not hypothetical future benefits—and that Defendant's anticipated double recovery at consumers' expense is both real and imminent.

16.     Other companies in Defendant's same position have enacted tariff refund programs to compensate their customers who paid higher prices for products

---

[3] Vito Emanuel, *Wall Street Is Betting on Tariff Refunds After Supreme Court Ruling*, NPR (Mar. 5, 2026), https://www.npr.org/2026/03/05/nx-s1-5736120/tariff-refunds-wall-street-trade.

and thus bore the burden of pass-through tariff costs.[4] Defendant could have enacted a similar payback program for Plaintiff and Members of the Class yet chose not to.

17.     At minimum, once IEEPA tariff refunds, reliquidation, or other recovery became available, Defendant's retention of tariff-related amounts paid by consumers became unfair, oppressive, and substantially injurious because Defendant retained the benefit of both consumer pass-through payments and the corresponding refund rights or proceeds.

18.     Accordingly, Plaintiff brings this action individually and on behalf of similarly situated individuals to seek redress for violations of the Michigan Consumer Protection Act ("CPA"), Mich. Comp. Laws § 445.903 *et seq.*, as well as common law Unjust Enrichment and Money Had and Received, and for such other relief as the Court may deem just and appropriate.

## **PARTIES**

19.     At all relevant times, Plaintiff has been a citizen of the State of Texas and resident of Collin County.

20.     Defendant General Motors LLC is a Delaware limited liability company that is licensed to do business in Michigan and which does business in

---

[4] Jeannette Neumann, *Cards Against Humanity to Give Tariff Refunds to Buyers Who "Overpaid,"* Crain's Chicago Business (Feb. 25, 2026), https://www.chicagobusiness.com/consumer-products/cards-against-humanity-give-tariff-refunds/.

Michigan. GM's global headquarters and principal place of business is located at 1240 Woodward Avenue, Detroit, MI 48226.

## JURISDICTION AND VENUE

21.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are more than 100 members of the Class, members of the Class are citizens of states different from Defendant, and greater than two-thirds of the members of the Class reside in states other than the state in which Defendant is a citizen.

22.     Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b), because Defendant resides in this District, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, and because Defendant conducts a substantial amount of business in this District. Accordingly, Defendant has sufficient contacts with this District to subject Defendant to personal jurisdiction in the District.

## COMMON FACTS

### DEFENDANT'S BUSINESS MODEL AND SUPPLY CHAIN

23.     Defendant advertises, markets, sells, and distributes motor vehicles throughout the United States.

7

24. Defendant sources a substantial amount of its products and components from manufacturers and producers located overseas and in Canada and Mexico. Upon information and belief, Defendant or its affiliated entities serve as the importer of record for such products and/or their components and paid IEEPA tariffs to U.S. Customs and Border Protection on those imports.

25. Upon information and belief, the vehicle Plaintiff purchased during the Class Period was either imported from abroad during the IEEPA tariff period or was made with components that were imported from abroad, and thus subject to IEEPA tariffs.

### DEFENDANT'S PASS-THROUGH OF IEEPA TARIFFS TO CONSUMERS

26. For purposes of this Complaint, the "Class Period" is defined as February 4, 2025 through February 24, 2026—the period during which IEEPA tariffs were in effect and enforced by U.S. Customs and Border Protection.

27. During the Class Period, Defendant charged prices for its vehicles that were inflated by the cost of IEEPA duties.

28. In an effort to conceal such price increases, GM's and other automakers' price hikes include an increase of nearly 40% in so-called "destination fees" charged to vehicle buyers.[5]

---

[5] Jamie L. Lareau, *Automakers Are Raising New Car Costs – Without Touching Sticker Price*, USA TODAY (Dec. 17, 2025), https://www.usatoday.com/story/cars/shopping/2025/12/17/car-prices-unavoidable-fees/87814028007/.

29.     Unlike the vehicle's MSRP, destination fees and other fees are not advertised as part of the vehicle's price, thus allowing GM to pass such costs onto consumers opaquely, and in a manner that discourages comparison shopping.

30.     Furthermore, destination fees "mean[] the dealer eats the added cost of tariffs more than the carmaker."[6] In other words, any bottom-line price increases implemented through increased destination fees flow straight to the automaker, not to the dealer.

### PLAINTIFF'S PURCHASE

31.     On February 24, 2026, Plaintiff purchased a new Buick Enclave Sport Touring from Sewell Buick GMC of Dallas, TX for a total price of $54,800.

32.     On information and belief, several components of Plaintiff's vehicle were imported from countries subject to IEEPA tariffs and were imported by or for Defendant during the period in which those tariffs were in effect. The product-level import origin, importer-of-record information, tariff classification, entry data, duty-payment records, and any records reflecting whether IEEPA tariff costs were incorporated into retail pricing are within Defendant's possession, custody, or control.

---

[6] Jamie L. Lareau, *Automakers Are Raising New Car Costs – Without Touching Sticker Price*, USA TODAY (Dec. 17, 2025), https://www.usatoday.com/story/cars/shopping/2025/12/17/car-prices-unavoidable-fees/87814028007/.

33.    Defendant paid IEEPA tariffs on such items that Plaintiff purchased and embedded the cost of those tariffs in the prices charged to Plaintiff. But for GM's pass-through of IEEPA tariff costs, Plaintiff would have paid lower prices for the vehicle he purchased.

34.    Defendant's retention of the unlawful IEEPA tariff costs that were passed on to Plaintiff and Class Members offends public policy as it is unconscionable and unfair for Plaintiff and similarly situated consumers to shoulder Defendant's tax burden under the IEEPA tariffs when those tariffs were unlawful and should not have been collected.

35.    As a result of Defendant's practice of passing on tariff costs to its customers, Plaintiff and the Class Members were forced to pay Defendant's tax burdens.

36.    Plaintiff and the members of the Class have unequal bargaining power relative to Defendant and are unable to negotiate the payment of the unlawful IEEPA tariffs from Defendant, and therefore Plaintiff and Class members could not avoid paying the unlawful IEEPA tariffs.

37.    Allowing Defendant to keep the proceeds of the unlawful IEEPA tariff charges deprives Plaintiff and Members of the Class of the money paid for the cost of the unlawful IEEPA tariffs while providing nothing of value to Plaintiff or Class Members.

10

38.     But for Defendant's charging Plaintiff and the Members of the Class the cost of the unlawful IEEPA tariffs, Plaintiff and the Members of the Class would not have needed to shoulder the cost of the unlawful IEEPA tariffs.

**DEFENDANT'S ANTICIPATED TARIFF REFUNDS AND RESULTING DOUBLE RECOVERY**

39.     On March 4, 2026, the United States Court of International Trade issued a significant order in *Atmus Filtration, Inc. v. United States*, directing U.S. Customs and Border Protection to refund duties imposed under the IEEPA. *Atmus Filtration, Inc. v. United States*, No. 26-01259, 2026 WL 616128 (Ct. Int'l Trade Mar. 4, 2026).

40.     The Court of International Trade's decision reinforced that all importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the Supreme Court's decision in *Learning Resources. Atmus Filtration*, 2026 WL 616128 (Ct. Int'l Trade Mar. 4, 2026). The Court ordered CBP to liquidate all unliquidated entries "without regard to IEEPA duties" and to reliquidate any liquidated entries for which liquidation is not final without regard to those duties. *Id.* at *2-3.

41.     According to Brandon Lord, the Executive Director of CBP's Trade Programs Directorate, as of March 4, 2026, the total amount of IEEPA duties and estimated duty deposits collected pursuant to IEEPA is approximately $166 billion. *Atmus*, ECF No. 31 at ¶ 12.

11

42. Accordingly, Defendant is entitled to substantial refunds for IEEPA tariffs it paid as the importer of record for goods sourced from China and other countries subject to IEEPA tariffs.

43. To date, Defendant has not established any mechanism to refund to consumers the tariff costs Defendant passed through to them via elevated prices and import charges during the Class Period.

44. This presents an obvious problem: Although Defendant will recover or is positioned to recover tariff refunds on the tariffed goods it sold, Defendant's customers have already borne the economic brunt of these tariffs by paying higher prices set by Defendant. The risk of Defendant obtaining double recovery is therefore imminent.

45. Defendant is poised to be paid twice for the same unlawful tariff burden: once by its customers (including Plaintiff) through elevated prices and import charges, and once by the U.S. government through tariff refunds.

## CLASS ACTION ALLEGATIONS

46. Plaintiff brings his claims individually and on behalf of the following Class pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure:

> **Class:** All persons in the United States who, during the Class Period, purchased or leased through any GM retail channel, any good subject to the IEEPA-based tariffs or made with components subject to the IEEPA-based tariffs.

47. Excluded from the Class are: (1) Defendant; (2) Defendant's officers and directors, those persons' immediate families, and the successors and predecessors of any such excluded person or entity; (3) any Judge or Magistrate Judge presiding over this action, their staff, and the members of their family; (4) persons who properly and timely request exclusion; (5) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; and (6) Plaintiff's counsel and Defendant's counsel, and their experts and consultants.

48. **Numerosity**. The proposed Class contains members so numerous that separate joinder of each member of the Class is impracticable. Upon information and belief, there are at least hundreds of thousands, if not millions, of proposed class members. The individuals who purchased items subject to IEEPA tariffs can be ascertained through records in the possession, custody, or control of Defendant.

49. **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class he seeks to represent, because the factual and legal bases of Defendant's liability to Plaintiff and the other Members of the Class are the same, and because Defendant's conduct has resulted in similar injuries to Plaintiff and to the Class. As alleged herein, Plaintiff and the Class have all suffered damages as a result of Defendant's tariff pass-through pricing.

50.    **Commonality and Predominance**. There are questions of fact or law common to the Class, which common questions predominate over any questions affecting only individual members, including but not limited to the following:

a. Whether Defendant paid IEEPA tariffs on products sold to consumers during the Class Period;

b. Whether Defendant paid IEEPA tariffs on components used to make products sold to consumers during the Class Period;

c. Whether Defendant passed IEEPA tariff costs onto consumers through elevated prices;

d. Whether Defendant's retention of the unlawful IEEPA Tariffs paid by Plaintiff and Members of the Class is unjust, oppressive, unscrupulous, or unfair;

e. Whether Defendant misled consumers regarding pricing and tariff pass-through;

f. Whether Defendant violated the Michigan Consumer Protection Act through its misrepresentations and omissions regarding pricing and tariff pass-through;

g. Whether Defendant unjustly enriched itself as a result of the unlawful conduct alleged above;

h. Whether Defendant has been or will be unjustly enriched by receiving government refunds for tariffs it passed through to consumers;

i. Whether the Class Members are entitled to restitution, actual damages, and attorneys' fees and costs.

51.    **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of all Class Members. Plaintiff understands the obligations inherent in representing a putative class, and the corresponding duties. Plaintiff has retained counsel competent and experienced in complex and class action litigation.

14

Plaintiff has no interests antagonistic to the Class's interests, and Defendant has no defenses unique to Plaintiff.

52.     **Superiority:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and because joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## CLAIMS FOR RELIEF

## COUNT I

### Violation of the Michigan Consumer Protection Act
MICH. COMP. LAWS § 445.903 *et seq.*
(on behalf of Plaintiff and the Class)

53.     Plaintiff incorporates the foregoing allegations in Paragraphs 1–52 as if fully stated herein.

54.     Plaintiff and the Class Members are "person[s]" within the meaning of the Mich. Comp. Laws § 445.902(1)(d).

55.     GM is a "person" engaged in "trade or commerce" within the meaning of the Mich. Comp. Laws § 445.902(1)(d).

56.     The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce," including: "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." MICH. COMP. LAWS § 445.903(1). GM participated in unfair, unconscionable, or deceptive methods, acts, or practices that violated the Michigan CPA.

57.     Defendant's conduct was unfair under the Michigan CPA. In addition, Defendant's public statements connecting price increases to tariffs, trade-rule

16

changes, and increased import costs were deceptive or misleading to the extent Defendant retained or intended to retain any refund, credit, reliquidation, or other recovery of the same tariff costs without returning or crediting the corresponding amounts to consumers.

58. Defendant has engaged in "unfair" practices by: (1) imposing price increases on Plaintiff and Class Members to recoup IEEPA-based tariff costs, (2) pursuing and being extremely likely to obtain recovery of those same tariff-related costs from the federal government, and (3) failing to account for, credit, or return to Plaintiff and Class Members the amounts previously collected if and when Defendant recovers such amounts through litigation.

59. GM's actions, as set forth above, occurred in the conduct of trade or commerce.

60. GM knew or should have known that its conduct violated the Michigan CPA.

61. After the Supreme Court held that the IEEPA tariffs lacked statutory authorization, Defendant became entitled or positioned to seek refunds, reliquidation, or other recovery of the IEEPA duties it had paid or deposited on imported products and components. Defendant nevertheless has not established any mechanism to return to consumers the tariff-related amounts Defendant passed through in the prices consumers paid.

62.     Defendant's conduct is unfair because Defendant shifted the economic burden of the IEEPA tariffs to consumers, while retaining for itself the refund rights, credits, reliquidation, or proceeds corresponding to the same tariff costs. Plaintiff does not allege that Defendant was required to predict the Supreme Court's ruling when the tariffs were first imposed; rather, the unfairness arises from Defendant's continued retention of tariff-related amounts after those tariff costs became refundable or recoverable.

63.     Defendant's conduct offends public policy because it permits the party that passed a government charge through to consumers to retain the benefit of a later refund of that same charge, while the consumers who bore the economic burden receive nothing.

64.     Defendant's conduct caused substantial injury to consumers because Plaintiff and the Class Members paid retail prices inflated by tariff-related costs, and Defendant's failure to return or credit those amounts deprives consumers of money corresponding to tariff costs that Defendant may recover or has recovered from the government.

65.     As a proximate result of Defendant's violations of the Michigan CPA, Plaintiff and the Class Members suffered actual economic damages, including the tariff-related portion of the retail prices they paid and/or the amount of any tariff

18

refund, credit, reliquidation, or other recovery Defendant received or is entitled to receive for tariff costs that Defendant passed through to consumers.

66.     Plaintiff and the Class Members are entitled to damages in an amount to be proven at trial, reasonable attorneys' fees, and any other penalties or awards that may be appropriate under the law.

## COUNT II
**Unjust Enrichment**
**(on behalf of Plaintiff and the Class)**

67.     Plaintiff incorporates the foregoing allegations in Paragraphs 1–66 as if fully stated herein.

68.     Plaintiff and the Members of the Class conferred monetary benefits on Defendant by paying elevated prices for products that included unlawful IEEPA Tariff costs.

69.     Defendant has been unjustly enriched because it collected and retained retail payments from Plaintiff and the Class that included amounts attributable to IEEPA tariff costs, while also retaining the right to seek or receive refunds, credits, reliquidation, or other recovery of those same tariff costs from the government.

70.     Defendant knew and appreciated the benefit it received because it set, charged, and retained destination fees and other costs that included tariff-related cost increases paid by Plaintiff and the Class. At minimum, after the Supreme Court's invalidation of the IEEPA tariffs and subsequent refund-related proceedings,

19

Defendant knew or should have known that any refund or recovery of IEEPA duties would correspond to tariff costs that consumers had already economically borne through fees and costs imposed on them by Defendant.

71. Defendant's retention of these benefits is unjust and inequitable now that Defendant is positioned to retain both the tariff-related amounts collected from consumers and the corresponding refund rights or proceeds from the government.

72. There is no adequate remedy at law for Plaintiff and the Members of the Class, as Defendant has established no mechanism to refund tariff costs to consumers, and consumers have no direct statutory cause of action to recover IEEPA tariffs from the government.

73. Under principles of equity and good conscience, it would be unjust to permit Defendant to retain both (a) the elevated prices consumers paid due to tariff pass-through pricing, and (b) government refunds of those same tariff costs.

74. Plaintiff and the other members of the Class are entitled to restitution in the amount by which Defendant has been unjustly enriched to the detriment of Plaintiffs and the Class, and an order requiring Defendant to disgorge any additional profits or other benefit it has retained as a result of its unjust and unlawful conduct.

## COUNT III
### Money Had and Received
### (on behalf of Plaintiff and the Class)

75.     Plaintiff incorporates all of the allegations and statements made in Paragraphs 1–74 above as if fully stated herein.

76.     This Count is pleaded in the alternative to Count II. While Count II (Unjust Enrichment) addresses the inequity of Defendant's retention of consumer overcharges already collected, this Count more particularly addresses Defendant's anticipated receipt and retention of government refund proceeds that, in equity, represent a return of costs that were economically borne by Members of the Class, not by Defendant.

77.     Defendant received money from Plaintiff and from each Member of the proposed Class in the form of higher prices proximately caused by the pass-through of IEEPA tariff costs.

78.     Defendant received this money for the purpose of repaying itself the IEEPA tariffs it had advanced, as the importer of record, to U.S. Customs and Border Protection as duties on imported goods.

79.     The Supreme Court has since determined that those tariffs lacked the requisite statutory authorization. *Learning Resources*, Slip Op. at 20.

80.     Defendant is now positioned to recover refunds of the IEEPA tariffs from the U.S. government through the liquidation process or litigation in the Court

21

of International Trade. Upon information and belief, Defendant has not paid or distributed any portion of these anticipated refunds to Plaintiff or other consumers who bore the economic burden of the tariffs through elevated prices.

81. The money that Defendant will recover from the government as IEEPA tariff refunds represents, in equity, a return of money that belonged to Plaintiff and to each Member of the proposed Class—the consumers who paid elevated prices due to Defendant's tariff pass-through.

82. Defendant has not returned this money to Plaintiff or the Class.

83. In equity and good conscience, Defendant should not be permitted to retain the funds it is owed by the government as IEEPA tariff refunds. Those funds belong, in equity, to Plaintiff and the Class, and Defendant is obligated to return them.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests that the Court enter an order awarding the following relief and judgment against Defendant as follows:

 a. An Order certifying the Class, defining the Class as requested herein, appointing Plaintiff as Class representative, and appointing Plaintiff's counsel as Class counsel;

b. An award of any actual, compensatory, and enhanced damages permitted to Plaintiff and other Class Members for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial, including prejudgment interest thereon;

c. A declaration that Defendant's retention of tariff-related amounts paid by Plaintiff and the Class, and/or Defendant's retention of any refund, credit, reliquidation, drawback, reimbursement, or other recovery corresponding to IEEPA tariff costs that Defendant passed through to Plaintiff and the Class, is unlawful, unfair, unjust, and inequitable;

d. An Order enjoining Defendant from retaining, without appropriate credit, refund, restitution, or other equitable adjustment to Plaintiff and the Class, any refund, credit, reliquidation, drawback, reimbursement, or other recovery corresponding to IEEPA tariff costs that Defendant passed through to Plaintiff and the Class;

e. An Order requiring Defendant to identify, segregate, preserve, and account for all refunds, credits, reliquidations, drawbacks, reimbursements, or other recoveries that Defendant has received, will receive, or is entitled to receive from the United States government or any other source for IEEPA tariff costs that Defendant passed through to Plaintiff and the Class;

f. An Order requiring Defendant to provide a full accounting of: (i) the IEEPA tariffs Defendant paid or deposited on imported vehicles, goods, parts, or components sold to Plaintiff and the Class; (ii) the amounts of those tariff costs that Defendant passed through to Plaintiff and the Class through vehicle prices, destination charges, fees, surcharges, or other charges; and (iii) all refunds, credits, reliquidations, drawbacks, reimbursements, or other recoveries Defendant has received, will receive, or is entitled to receive for those same tariff costs;

g. An award of reasonable attorneys' fees, costs, and other litigation expenses;

h. An award of pre- and post-judgment interest as available under law;

i. Restitution and/or disgorgement of any funds in the amount Defendant was unjustly enriched by its conduct; and

j. Such further and other relief as the Court deems just, reasonable, and equitable.

Dated: May 22, 2026                                    Respectfully submitted,


By: /s/ *Brandon S. Corcoran*

Neil J. Marchand (P73118)
Brandon S. Corcoran (P85673)
MILLER JOHNSON
45 Ottawa Ave. SW, Suite 1100
Grand Rapids, MI 49503
Tel: (616) 831-1764
marchandn@millerjohnson.com

Myles McGuire (*pro hac vice* forthcoming)
Evan M. Meyers (*pro hac vice* forthcoming)
Joseph Dunklin (*pro hac vice* forthcoming)
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
emeyers@mcgpc.com
jdunklin@mcgpc.com

*Counsel for Plaintiff and the putative Class*

24

MJ_ND 4901-7172-9583v1